### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICOLA CASTELLI,<br><br>                   Plaintiff,<br>vs.<br><br>AMERICAN   RED   CROSS,   JILL<br>MULLANE, OMER ANGUN, ABC CORPS<br>1-10,   AND   JOHN   DOES   1-10<br>(fictitious   names   representing<br>unknown Defendants),<br><br>                   Defendant. | Civil Action No.: _____<br><br><br>COMPLAINT AND JURY DEMAND |

### INTRODUCTION

1.    Plaintiff, Nicola Castelli (hereinafter "Plaintiff"), residing at 50 Carlos Drive, Fairfield, New Jersey, 07004, by and through his attorneys, Piro Zinna Cifelli Paris & Genitempo, LLC, located at 360 Passaic Avenue, Nutley, New Jersey, 07110, brings this Complaint against Defendants American Red Cross ("Red Cross") and Red Cross employees Jill Mullane and Omer Angun, located at 209 Fairfield Road, Fairfield, New Jersey, 07004.

### JURISDICTION

2.    The Defendant, American Red Cross ("Red Cross") is a not-for-profit corporation operating under a congressional charter which is codified at 36 U.S.C. § 300101, et seq.

3.    This Court has original jurisdiction under 36 U.S.C. § 300105(a)(5) over any case to which the Red Cross is a party. Am.

Nat'l Red Cross v. S.G., 505 U.S. 247, 248, 257 (1992) (interpreting 36 U.S.C. § 2, which has been re-codified at 36 U.S.C. § 300105).

## VENUE

4.    Venue is proper in the United States District Court for the District of New Jersey in accordance with 28 U.S.C. §1391.

5.    The individual defendants are residents of the State of New Jersey and a substantial part of the events or omissions giving rise to the claim occurred in the State of New Jersey.

## BACKGROUND

6.    A Complaint with the same parties and factual allegations was initially filed in New Jersey Superior Court, Essex County, under Docket No. ESX-L-1075-23.

7.    After corresponding with counsel for Defendants, American Red Cross, Jill Mullane, and Omer Angun, Plaintiff agreed, in good faith, to withdraw the pending Superior Court Complaint without prejudice and refile the action in the United States District Court for the District of New Jersey.

## PARTIES

8.    Defendant Red Cross, at all times relevant to this Complaint, is a not-for-profit corporation with a Northern New Jersey office located at 209 Fairfield Road, Fairfield, New Jersey, 07004.

9.    Defendant, Jill Mullane ("Defendant Mullane"), is at all times relevant to this Complaint, an employee of Defendant Red Cross at its 209 Fairfield Road, Fairfield, New Jersey, 07004 location.

10.   Defendant, Omer Angun ("Defendant Angun"), is at all times relevant to this Complaint, a manger of Defendant Red Cross at its 209 Fairfield Road, Fairfield, New Jersey, 07004 location.

## OPERATIVE FACTS

11.   Plaintiff, at all times relevant to this Complaint, was employed by Dropoff, Inc. ("Dropoff") as a medical courier.

12.   Plaintiff conducted business for Dropoff throughout New Jersey, until his unlawful termination on or around March 14, 2022.

13.   Plaintiff was hired by Dropoff and commenced employment as a medical courier on or around October 10, 2020.

14.   Throughout Plaintiff's employment with Dropoff, he was a highly relied upon employee who excelled in performing his job duties.

15.   Throughout his employment, Plaintiff was directed by Dropoff manager, Bernard Melton ("Melton"), among others, as to where and when to perform pickups and deliveries on behalf of Dropoff.

16.   Often, Plaintiff was directed by Dropoff to conduct pickups from Defendant Red Cross' North New Jersey office, located in Fairfield, New Jersey

17.   Until encountering Defendant Mullane, an employee of Defendant Red Cross' North New Jersey office, Plaintiff had never received any disciplinary action from Dropoff.

18.   In or around March of 2021, while in the course of his employment, Plaintiff arrived at Defendant Red Cross' North New Jersey office to pick up an order.

19.   When Plaintiff arrived at Defendant Red Cross, Defendant Mullane was the employee of Defendant Red Cross with whom he interacted.

20.   As Plaintiff received the order from Defendant Mullane, Defendant Mullane inappropriately asked Plaintiff out on a date. Plaintiff was uncomfortable with the invitation, but politely declined.

21.   Thereafter, Defendant Mullane repeatedly asked Plaintiff on dates, during the course of each of their employments, while Plaintiff was conducting pickups or deliveries for Dropoff at Defendant Red Cross. Each time, Plaintiff politely declined.

22.   Plaintiff became increasingly uncomfortable with and embarrassed by the situation created by Defendant Mullane.

23.   In or around June of 2021, Plaintiff was on Defendant Red Cross' premises awaiting a pickup. While waiting, Plaintiff assisted a FedEx driver load her truck.

24.   Defendant Mullane approached Plaintiff and began to harass and embarrass him in front of the FedEx driver.

4

25. Specifically, Defendant Mullane inappropriately inquired as to whether the FedEx driver found Plaintiff attractive. Defendant Mullane then asked Plaintiff for his phone number to give to the FedEx driver, so they could "go out on a date."

26. Plaintiff was shocked and humiliated by the interaction but continued to assist the FedEx driver while attempting to ignore Defendant Mullane.

27. On or about July 31, 2021, Plaintiff's interactions with Defendant Mullane became increasingly hostile. On that date Plaintiff was performing his job duties for Dropoff and picked up an order from Defendant Red Cross.

28. Shortly after Plaintiff performed his pickup, Plaintiff received a text from his supervisor, Melton. Melton informed Plaintiff that he was suspended until Defendant Red Cross reviewed their security cameras. Plaintiff was not given a reason for his suspension at that time.

29. Soon thereafter, Plaintiff contacted Defendant Angun, a manager at Defendant Red Cross. Defendant Angun informed Plaintiff that Defendant Mullane complained to Defendant Red Cross that Plaintiff was loud and slammed his trunk when performing the pickup.

30. After Defendant Red Cross reviewed its security cameras, Plaintiff was cleared of all wrongdoing alleged by Defendant Mullane.

31.   Upon information and belief, the video security footage reviewed by Defendant Red Cross clearly demonstrated that Plaintiff did not engage in the behavior Defendant Mullane falsely accused him of.

32.   Dropoff then informed Plaintiff that he was no longer suspended and was eligible to return to work on the following Monday, August 2, 2021.

33.   Due to Defendant Mullane's false allegation, Plaintiff missed two days of work, and therefore, two days of income.

34.   Soon thereafter, in August of 2021, Plaintiff spoke with Melton, and informed Melton of the ongoing sexual harassment he faced from Defendant Mullane.

35.   Specifically, Plaintiff informed Melton of Defendant Mullane's constant sexual advances, the incident with the FedEx driver, as well as Defendant Mullane's inappropriate inquiries into Plaintiff's nonexistent relationship with the FedEx employee.

36.   Around the same time, Plaintiff again reached out to Defendant Angun. Defendant Angun merely advised Plaintiff to avoid Defendant Mullane, because according to Defendant Angun, she "suffers from bipolar disorder."

37.   Accordingly, no investigation was conducted into Plaintiff's complaints of sexual harassment by either Dropoff or Defendant Red Cross, and Plaintiff received no support from Dropoff nor Defendant Red Cross related to his complaints.

38. For the remainder of his employment, Plaintiff reluctantly carried out pickups from, and deliveries to, Defendant Red Cross. Plaintiff remained fearful of what Defendant Mullane was capable of, and the potential effect of wrongfully causing an end to his employment with Dropoff.

39. On one occasion, on or around October 31, 2021, Defendant Mullane concealed plastic snakes in Plaintiff's truck to frighten and/or intimidate him.

40. Upon information and belief, Defendant Mullane leveraged these pranks as an excuse to speak with, and further harass, Plaintiff.

41. In November of 2021, Plaintiff again brought Defendant Mullane's conduct to the attention of both Dropoff and Defendant Red Cross, and again voiced complaints related to Defendant Mullane's harassment and retaliation.

42. However, Plaintiff's complaints were again ignored by both entities.

43. In or about November 2021, Plaintiff received an order to pick up boxes from Saint Joseph's University Medical Center (hereinafter "St. Joseph's") and deliver them to Defendant Red Cross.

44. Approximately ten (10) minutes after Plaintiff delivered the boxes to Defendant Red Cross, he received an order from Dropoff

to pick up boxes from Defendant Red Cross and deliver them back to Saint Joseph's.

45.   Defendant Mullane was once again the Defendant Red Cross employee with whom Plaintiff met to pick up the order. Plaintiff noted that he was confused as to why he was returning the boxes he had just dropped off back to St. Joseph's.

46.   In response, Defendant Mullane scolded Plaintiff, told him not to tell her how to do her job, and slammed the door on him.

47.   Soon thereafter, Plaintiff received a phone call from Melton, wherein Melton informed Plaintiff that he was suspended by Dropoff until Defendant Red Cross performed an investigation into a complaint against Plaintiff. Plaintiff was not made aware of the substance of the complaint.

48.   The next day, Plaintiff was informed that he could return to work, as again, Defendant Red Cross investigated and determined Plaintiff did not engage in any wrongdoing.

49.   Due to Defendant Mullane's conduct, as well as Dropoff and Defendant Red Cross' continued failure to investigate and/or remediate his complaints, Plaintiff was terrified to perform his job duties at Defendant Red Cross.

50.   Despite Plaintiff's complaints to both Dropoff and Red Cross, Dropoff continually required he perform pickups and deliveries at Defendant Red Cross.

51.  On March 12, 2022, Plaintiff received a text message from a Dropoff dispatcher requesting he conduct a pickup of eight (8) boxes from the Red Cross' office in Fairfield, which were to be delivered to the Philadelphia Red Cross.

52.  Plaintiff initially refused, but Dropoff pleaded with Plaintiff to complete the order, as no other drivers were available. Plaintiff agreed to complete the delivery.

53.  Upon arriving at Defendant Red Cross to pick up the order, Plaintiff rang the doorbell as he did for every delivery. There was no response, so Plaintiff waited for a period of time and rang the doorbell again. Again, there was no response.

54.  Plaintiff eventually texted a Dropoff dispatcher, who directed him to wait while Dropoff contacted Defendant Red Cross.

55.  Subsequently, a Defendant Red Cross employee came outside and informed Plaintiff that there was no order for him to pick up.

56.  Plaintiff immediately texted the Dropoff dispatcher and informed the dispatcher of the situation.

57.  Plaintiff also advised the dispatcher that he would be leaving Defendant Red Cross' premises due to his concern of Defendant Mullane's erratic and harassing behavior.

58.  Approximately one hour after Plaintiff departed the Red Cross, he received a text from a Dropoff manager, "Oakley,"

informing him that he was suspended until an investigation was undertaken by Defendant Red Cross.

59.  Plaintiff inquired as to the reason for the suspension, but Dropoff did not respond.

60.  Plaintiff then reached out to Defendant Angun, who informed Plaintiff that Defendant Mullane reported Plaintiff for allegedly using a volunteer entrance at the Red Cross during the pickup.

61.  The report by Defendant Mullane was entirely fabricated, as Plaintiff did not enter the Red Cross building. Instead, he remained on the side of the building where the doorbell is located, as he did on all previous pickups.

62.  Upon information and belief, Defendant Red Cross did not investigate Defendant Mullane's several clearly false reports of Plaintiff's alleged conduct.

63.  Rather than investigate the alleged incident, on or about March 14, 2022, Plaintiff was terminated by Dropoff.

64.  Plaintiff was provided no explanation for his termination.

65.  Notwithstanding Plaintiff's numerous complaints of harassment and retaliation by Defendant Mullane made to Defendant Red Cross and Dropoff, Plaintiff was terminated.

66.   Defendant Red Cross utterly failed to investigate and/or remedy the sexual harassment complained of by Plaintiff and fostered an environment of unlawful activity.

67.   Plaintiff has suffered, and continues to suffer, from severe physical and emotional distress, humiliation, mental anguish, and economic loss.

### COUNT ONE

### RETALIATION IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1 et. seq.

68.   Plaintiff repeats and realleges each of the statements set forth in the preceding paragraphs as if same were set forth at length herein.

69.   During Plaintiff's employment with Dropoff, he was sexually harassed by Defendant Mullane while performing his job duties and responsibilities.

70.   Plaintiff denied each of Defendant Mullane's sexual advances.

71.   Upon information and belief, in response to Plaintiff's denial of Defendant Mullane's sexual advances, Defendant Mullane retaliated against Plaintiff by filing false complaints with Defendant Red Cross.

72.   Plaintiff was cleared by Defendant Red Cross of wrongdoing in response to each false complaint filed by Defendant Mullane against him.

73.  Yet, Defendant Red Cross did not investigate Plaintiff for making false complaints.

74.  Plaintiff engaged in protected New Jersey Law Against Discrimination ("NJLAD") activity by complaining to Defendant Red Cross of the sexual harassment and retaliation he was subjected to by their employee, Defendant Mullane.

75.  Plaintiff had a good faith, reasonable basis for complaining about Defendant Mullane's workplace behavior.

76.  Defendant Red Cross failed to investigate Plaintiff's complaints of sexual harassment or retaliation.

77.  On or about March 14, 2022, soon after Plaintiff complained of sexual harassment for the third time, his employment was terminated.

78.  As a direct and proximate result of the aforementioned unlawful retaliation, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff, NICOLA CASTELLI, demands judgment in his favor and against the Defendants on this First Count of the Complaint as follows:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and equitable.

## COUNT TWO

### AIDING AND ABETTING IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1 et seq.

79. Plaintiff repeats and realleges each of the statements set forth in the preceding paragraphs as if same were set forth at length herein.

80. Defendant Angun was aware of his role as part of continuing retaliation and harassment against the Plaintiff and aided in its furtherance.

81. Defendant Angun knowingly and substantially assisted the principal violation by failing to report the sexual harassment and retaliation Plaintiff complained of and was experiencing to his employer, Defendant Red Cross.

82. As a direct and proximate result of the aforementioned aiding and abetting of unlawful conduct, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff, NICOLA CASTELLI, demands judgment in his favor and against the Defendants on this Second Count of the Complaint as follows:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and equitable.

## COUNT THREE

### DEFAMATION

83.   Plaintiff repeats and realleges each of the statements set forth in the preceding paragraphs as if same were set forth at length herein.

84.   Defendant Mullane communicated to her employer, Defendant Red Cross, several false allegations about Plaintiff.

85.   Defendant Mullane made multiple knowingly false statements of fact concerning the Plaintiff, including that Plaintiff was loud and rude to her, and slammed his trunk in her presence, that Plaintiff told her how to conduct her job, and that Plaintiff entered through the volunteer entrance on one occasion, among other statements.

86.   Defendant Mullane's statements were plainly intended to harm the Plaintiff's reputation with his employer, Dropoff, and within the eyes of the community.

87.   Defendant Mullane maliciously reported these fabricated incidents to Defendant Red Cross in an attempt to retaliate against the Plaintiff for denying her sexual advances.

88.   As a direct and proximate result of the aforementioned defamation, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff, NICOLA CASTELLI, demands judgment in his favor and against the Defendants on this Third Count of the Complaint as follows:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and equitable.

## COUNT FOUR

### TORTIOUS INTERFERENCE WITH A PROSPECTIVE ECONOMIC ADVANTAGE

89.   Plaintiff repeats and realleges each of the statements set forth in the preceding counts as if same were set forth at length herein.

90.   Plaintiff had a reasonable expectation that his employment with Dropoff would continue.

91.   Throughout his employment with Dropoff, Plaintiff was fully able to conduct his job duties and responsibilities.

92.   Defendant Mullane interfered with Plaintiff's reasonable expectation of economic advantage by intentionally sabotaging

Plaintiff's reputation and succeeding in having Plaintiff terminated from his employment with Dropoff.

93. As evidenced by Defendant Red Cross' security footage, Plaintiff was cleared of all wrongdoing of all complaints by Defendant Mullane. Each of Defendant Mullane's complaints to Defendant Red Cross were fabricated, and made in furtherance of the Defendant Mullane's attempt to have Plaintiff terminated.

94. As a direct result of Defendant Mullane's malicious complaints, Plaintiff was unlawfully terminated by his employer.

95. Defendant Mullane tortiously interfered with Plaintiff's prospective economic relationship.

96. As a direct and proximate result of Defendant Mullane's tortious interference with Plaintiff's economic advantage, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff, NICOLA CASTELLI, demands judgment in his favor and against the Defendants on this Fourth Count of the Complaint as follows:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and equitable.

**COUNT FIVE**

**NEGLIGENCE**

97.   Plaintiff repeats and re-alleges each of the statements set forth in the preceding paragraphs as if same were set forth at length herein.

98.   Defendant Red Cross negligently created a discriminatory and/or harassing workplace.

99.   Defendant Red Cross breached its duty of care by failing to exercise due care with respect to sexual harassment in the workplace.

100.  As a result of Defendant Red Cross' breach of duty, Plaintiff suffered harm.

101.  As a direct and proximate result of Defendant Red Cross' negligence, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff, NICOLA CASTELLI, demands judgment in his favor and against the Defendants on this Fifth Count of the Complaint as follows:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and equitable.

## COUNT SIX

### RESPONDEAT SUPERIOR

102. Plaintiff repeats and re-alleges each of the statements set forth in the preceding paragraphs as if same were set forth at length herein.

103. Defendant Mullane and Defendant Angun, at all times relevant to this Complaint, were employees of Defendant Red Cross.

104. During Plaintiff's interactions with Defendant Mullane and Defendant Angun, each were acting with the scope of their employment with Defendant Red Cross.

105. Defendant Mullane engaged in the sexual harassment of Plaintiff throughout the course of her employment.

106. Plaintiff complained to Defendant Angun of the sexual harassment he was subjected to by Defendant Mullane.

107. Defendant Angun failed to report or otherwise remedy the alleged sexual harassment.

108. Defendant Red Cross failed to implement effective sensing or monitoring mechanisms to ensure the trustworthiness or effectiveness of any policies or complaint structures.

109. Defendant Red Cross failed to demonstrate an unequivocal commitment to preventing sexual harassment and discrimination.

110. As a direct and proximate result of Defendant Red Cross' aforementioned conduct, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff, NICOLA CASTELLI, demands judgment in his favor and against the Defendants on this Sixth Count of the Complaint as follows:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and equitable.

### COUNT SEVEN

### FAILURE TO MAINTAIN AN EFFECTIVE POLICY AGAINST UNLAWFUL HARASSMENT AND DISCRIMINATION IN THE WORKPLACE

111. Plaintiff repeats and re-alleges each of the statements set forth in the preceding paragraphs as if same were set forth at length herein.

112. An effective anti-harassment and discrimination policy requires employers to investigate complaints of harassment promptly, thoroughly, and completely.

113. Plaintiff complained to Defendant Red Cross of Defendant Mullane's unlawful conduct.

114. Defendant Red Cross failed to investigate Plaintiff's numerous complaints of sexual harassment.

115. As a direct and proximate result of Defendant Red Cross' failure to investigate Plaintiff's complaints, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff, NICOLA CASTELLI, demands judgment in his favor and against the Defendant on this Seventh Count of the Complaint as follows:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and equitable.

<u>**JURY DEMAND**</u>

Plaintiff demands trial by jury as to all matters herein.

<u>**DESIGNATION OF TRIAL COUNSEL**</u>

Plaintiff hereby designates Michael A. Koribanick, ESQ. as trial counsel for the within matter.

<u>**CERTIFICATION**</u>

I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by

existing law or by a non-frivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

### **LOCAL CIVIL RULE 11.2 CERTIFICATION**

Pursuant to Local Civil Rule 11.2, I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of another action pending in any court or of any pending arbitration or administrative proceeding.

I certify under penalty of perjury that the foregoing is true and correct.

**PIRO ZINNA CIFELLI PARIS**
**& GENITEMPO, LLC**
Attorneys for Plaintiff,
Nicola Castelli

**_/s/Michael A. Koribanick, Esq._**
Michael A. Koribanick, Esq.

Dated: March 1, 2023