Not for Publication

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICOLA CASTELLI,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN RED CROSS, JILL MULLANE, OMER ANGUN,<br><br>Defendants. | Civil Action No.: 23-1198 (ES) (AME)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Plaintiff Nicola Castelli filed this action bringing claims under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.*, as well as state law claims of defamation, tortious interference with a prospective economic advantage, negligence, "respondeat superior," and "failure to maintain an effective policy against unlawful harassment and discrimination in the workplace." (D.E. No. 1 ("Complaint" or "Compl.")). Before the Court is a motion to compel arbitration ("Motion to Compel Arbitration"), or, in the alternative, to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss") (collectively, the "Motion"), filed by Defendants the American Red Cross and its employees Jill Mullane and Omer Angun. (D.E. No. 11). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' Motion is **DENIED** *without prejudice* pending limited fact discovery on the issue of arbitrability.

## I. BACKGROUND

### A. Factual Allegations

Plaintiff was employed by Dropoff, Inc. ("Dropoff") as a medical courier from on or around October 10, 2020 to on or around March 14, 2022. (Compl. ¶¶ 11–13). During his employment, Plaintiff frequently "was directed by Dropoff to conduct pickups" from the Fairfield, New Jersey office of Defendant nonprofit American Red Cross ("ARC"), one of Dropoff's customers. (*Id.* ¶ 16). Plaintiff alleges that he was unlawfully terminated by Dropoff after experiencing sexual harassment from an ARC employee, Jill Mullane. Specifically, Plaintiff alleges that in or around March of 2021, while in the process of performing his job duties (i.e., delivering packages to ARC), Defendant Mullane asked Plaintiff out on a date, which Plaintiff refused. (*Id.* ¶ 20). Plaintiff alleges that Mullane subsequently asked Plaintiff out on dates repeatedly, with Plaintiff declining each time. (*Id.* ¶ 21). In or around June 2021, Mullane allegedly harassed Plaintiff in front of a third party, a FedEx driver, by commenting on Plaintiff's appearance and attempting to set Plaintiff up with the FedEx driver. (*Id.* ¶¶ 23–25). Next, on or about July 31, 2021, Plaintiff picked up an order from ARC; shortly thereafter, Plaintiff was informed by his supervisor, Bernard Melton, that Plaintiff was suspended. (*Id.* ¶¶ 27–29). Plaintiff later learned from ARC manager Omer Angun, another defendant in this action, that he was suspended because Defendant Mullane complained that Plaintiff "was loud and slammed his trunk when performing the pickup." (*Id.*). Plaintiff was allegedly cleared of wrongdoing after ARC reviewed its security camera footage, with Dropoff lifting his suspension on August 2, 2021. (*Id.* ¶ 30). Sometime later in August 2021, Plaintiff alleges he spoke with Melton and Defendant Angun about the harassment he had been receiving from Defendant Mullane. (*Id.* ¶ 34). Plaintiff alleges Defendant Angun "merely advised Plaintiff to avoid Defendant Mullane, because

2

according to Defendant Angun, she 'suffers from bipolar disorder.'" (*Id.* ¶¶ 34–36). Plaintiff asserts that no investigation of the harassment was conducted by ARC or Dropoff. (*Id.* ¶ 37).

Plaintiff alleges that the harassment from Defendant Mullane continued after his complaints about her behavior. (*Id.* ¶¶ 38–39). For example, he alleges that on one occasion Mullane put plastic snakes in Plaintiff's truck. (*Id.*). In November 2021, Plaintiff alleges he again reported Mullane's harassment to Dropoff and ARC, and was once again ignored. (*Id.* ¶¶ 41–42). That same month, Plaintiff asserts that while performing his job duties, he was directed to deliver certain boxes to ARC; soon after delivery, he alleges that he was directed to pick the boxes back up and return them to where he had gotten them. (*Id.* ¶¶ 43–44). Plaintiff asserts that he noted his confusion about this to Defendant Mullane, with whom he met to pick the boxes back up, and that Mullane "scolded" him and slammed the door. (*Id.* ¶¶ 45–46). Soon after, Plaintiff allegedly was informed that he was again suspended by Dropoff due to a complaint against him; the next day, he was told that the suspension was lifted after an investigation by ARC determined that Plaintiff did not do anything wrong. (*Id.* ¶¶ 47–48).

Plaintiff additionally asserts that on March 12, 2022, Plaintiff was directed to pick up boxes from ARC, but when he arrived, he was told that there was no order to pick up, after which he informed his Dropoff dispatcher about the situation and told the dispatcher he would be leaving ARC's premises "due to his concern of Defendant Mullane's erratic and harassing behavior." (*Id.* ¶¶ 51–57). An hour later, Plaintiff allegedly was informed yet again that he was suspended pending an investigation by ARC. (*Id.* ¶ 58). Shortly thereafter, Plaintiff learned that he was reported again for misconduct, which he again denies. (*Id.* ¶¶ 60–61). Plaintiff alleges that ARC did not investigate the incident, and that Plaintiff was subsequently terminated by Dropoff. (*Id.* ¶¶ 62–63).

### B.     Procedural History

Plaintiff initially filed a complaint against Dropoff, Dropoff employee Melton, and the Defendants in the current action (ARC, Mullane, and Angun) in the Superior Court of New Jersey, Essex County, on October 4, 2022.  (Opp. at 5).  After counsel for Dropoff contacted Plaintiff's counsel regarding the existence of an Arbitration Agreement between Plaintiff and Dropoff, Plaintiff withdrew his complaint without prejudice and instead agreed to file an Arbitration demand against Dropoff and Melton.  (*Id.* at 6).  Before submitting a consent order withdrawing the complaint, counsel for Defendants removed the matter to the United States District of New Jersey, before the Honorable Susan D. Wigenton, U.S.D.J.  (*Id.*; *Castelli v. Dropoff, Inc., et al.*, No. 22-6477, at D.E. No. 1).  Plaintiff thereafter filed a stipulation dismissing the action without prejudice in the case before Judge Wigenton, which Judge Wigenton approved on November 8, 2022.  (Opp. at 6; *Castelli*, No. 22-6477, at D.E. No. 4).

On February 15, 2023, Plaintiff filed a new complaint in New Jersey Superior Court, Essex County.  (Opp. at 6).  Plaintiff then agreed to withdraw the complaint without prejudice and refile the action in this Court.  (*Id.*).  Plaintiff withdrew the complaint on March 1, 2023, and initiated this action against Defendants Mullane, Angun, and ARC in this Court, the United States District Court for the District of New Jersey, on March 1, 2023.  (*Id.*; D.E. No. 1).  Plaintiff's Complaint alleges seven causes of action against Defendants, including (i) violations of the NJLAD (Counts I and II); (ii) defamation (Count III); (iii) tortious interference with a prospective economic advantage (Count IV); (iv) negligence (Count V); (v) "respondeat superior" (Count VI); and (vi) "failure to maintain an effective policy against unlawful harassment and discrimination in the workplace" (Count VII).  On May 25, 2023, Defendants filed a motion to compel Plaintiff to arbitrate his claims or, in the alternative, to dismiss the action pursuant to Federal Rule of Civil

Procedure 12(b)(6).  (D.E. No. 11-1 ("Mov. Br.")).  The Motion is fully briefed.  (D.E. No. 16 ("Opp. Br."); D.E. No. 19 ("Reply")).

## II.    LEGAL STANDARD

The Federal Arbitration Act (the "FAA") "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)).  "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009).  A court is required to order that the parties proceed with arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue."  9 U.S.C. § 4.  By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so."  *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999).  The "presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'"  *Kirleis*, 560 F.3d at 160 (quoting *Fleetwood Enters. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)).  "When the very existence of . . . an [arbitration] agreement is disputed, a district court is correct to refuse to compel arbitration until it resolves the threshold question of whether the arbitration agreement exists." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 775 n.5 (3d Cir. 2013).  Nevertheless, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

### III.    DISCUSSION

In their moving brief, Defendants assert that Plaintiff entered into a binding Arbitration Agreement within his employment agreement with Dropoff.  (Mov. Br. at 5; *see also* D.E. No. 12-2 ("Arbitration Agreement")).  This agreement states in relevant part:

> This Arbitration Agreement is between Nicola Castelli ("Carrier"), on the one hand, and Contractor Management Services, LLC dba Openforce[1] ("Openforce"), on the other hand.  **All current and future employees, contractors, workers, successors and affiliated businesses of the parties (whether sole proprietorship, partnership, limited liability entity or corporation) to this agreement are expressly intended third-party beneficiaries of this Arbitration Agreement, entitled to its protections and bound by its terms**.

(Arbitration Agreement at 20 (emphasis added)).  Clause 1(a) of the Arbitration Agreement defines the claims covered by the Agreement in the following manner:

> Unless specifically excluded from this Arbitration Agreement, as described in Section 1(b) below, claims involving the following disputes shall be subject to arbitration as described in this Arbitration Agreement, regardless of whether brought by Carrier, Openforce, or any agent, employee or contractor of either Party, and regardless of whether such claims already exist or arise in the future: (1) disputes arising out of or related to this Agreement; (2) **disputes arising out of or related to Carrier's business or contractual relationship(s) with Openforce (including cargo claims) and/or customers of Openforce, including any claims relating to termination of any such relationship(s), and/or Carrier's performance of any services**; and (3) disputes arising out of or relating to the interpretation, application, enforceability, revocability, conscionability and/or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. . . .

(*Id.* (emphasis added)).

Defendants argue that they, as (i) a customer of Dropoff (ARC) and (ii) employees of that customer (Mullane and Angun), are intended third-party beneficiaries of the arbitration agreement.

---

[1] The agreement was originally with Dropoff's predecessor "Openforce"; Dropoff allegedly succeeded Openforce to the contract effective September 22, 2019.  (Mov. Br. at 8 n.1; D.E. No. 12-3).

6

(Mov. Br. at 9). To support this assertion, Defendants point out that the Arbitration Agreement (i) specifically provides that "contractors" and "affiliated businesses" of Dropoff are "intended third-party beneficiaries of th[e] Arbitration Agreement"; and (ii) defines covered claims to include "claims involving . . . disputes arising out of or related to [Castelli's] business or contractual relationship(s) with [DropOff] (including cargo claims) and/or customers of [DropOff]." (*Id.* at 8–9 (quoting Arbitration Agreement at 20)). Further, to support their Motion to Compel Arbitration, Defendants point to Plaintiff's state court stipulation when dismissing his original action against Dropoff, Melton, and the Defendants in this current case, which states:

> IT IS HEREBY STIPULATED by the Plaintiff to the above-captioned action, through the undersigned counsel of record, that the above-captioned action and all claims asserted therein are hereby withdrawn in favor of binding arbitration in accordance with the parties' agreement.

(D.E. No. 12-1). Defendants argue that this stipulation indicates that the Arbitration Agreement extends to Defendants. (Mov. Br. at 6).

In Opposition, Plaintiff argues that the Arbitration Agreement does not apply to his claims against Defendants, because Defendants do not qualify as "current and future employees, contractors, workers, successors [or] affiliated businesses" of Dropoff, and thus are not intended third-party beneficiaries under the Arbitration Agreement's terms. (Opp. at 10–11). Plaintiff further argues that the language concerning covered claims in the Arbitration Agreement refers to claims *against Dropoff* involving Dropoff's business/contractual relationships or customers, not any claim against any defendant involving Dropoff's business/contractual relationships or customers. (*Id.* at 12–13). Thus, Plaintiff argues, claims against non-covered parties do not fall under the Agreement, and "even if the court were to find that Defendants are third-party beneficiaries, Plaintiff's claims against Defendants are outside the scope of the Arbitration

7

Agreement between himself and Dropoff, and therefore preclude the arbitration of his claims against Defendants." (*Id.* at 12–14). Plaintiff also asserts that his state court stipulation was without prejudice to refiling, and that after the stipulation, he refiled his Complaint after removing the parties he admits are subject to the Arbitration Agreement (Dropoff and Melton). (Opp. at 14). Finally, Plaintiff argues that "the existence of an agreement to arbitrate is not apparent from the face of Plaintiff's Complaint, which does not reference or attach the Dropoff employment agreement or the Arbitration Agreement within the employment agreement. Instead, Defendants' motion to compel arbitration relies exclusively on matters outside the pleadings. Accordingly, the Rule 56 standard governs." (*Id.* at 8).

As explained below, because the affirmative defense of arbitrability is not apparent on the face of the Complaint or documents integral to or relied upon therein, the Court finds that Defendants' Motion must be denied pending limited discovery on the issue of arbitrability.

When a Court is asked to determine whether a valid arbitration agreement exists, it must first decide whether to use the Rule 12(b)(6) or Rule 56 standard of review. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). "[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Cap. Leaders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). Further, even where an agreement to arbitrate is not explicitly mentioned on the face of the complaint and is not attached as an exhibit to the complaint, a court may properly consider the agreement under Rule 12(b)(6) if it is integral to or explicitly relied upon in the complaint or has been incorporated by reference into the

8

complaint based on a plaintiff's allegations. *See e.g., CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014); *George v. Midland Funding, LLC*, No. 18-15830, 2019 WL 2591163, at *3 (D.N.J. June 25, 2019); *Stacy v. Tata Consultancy Servs., Ltd.*, No. 18-13243, 2019 WL 1233081, at *5 (D.N.J. Mar. 14, 2019). For example, some courts in this Circuit have found an arbitration agreement to be incorporated by reference in a complaint where the underlying claims are based on agreements that contain the disputed arbitration provisions or where the complaint references an agreement that contains the arbitration provision. *See CardioNet, Inc.*, 751 F.3d at 168 n.2.; *George*, 2019 WL 2591163, at *3.

The Third Circuit has provided that it is inappropriate to consider a motion to compel arbitration under a Rule 12(b)(6) standard in two instances: (i) if "the complaint and its supporting documents are unclear regarding the agreement to arbitrate," or (ii) "if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." *Guidotti*, 716 F.3d at 776. Under either scenario, "the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." *Id.* at 774. "After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id.*; *see Discovery House v. Advanced Data Sys. RCM, Inc.*, No. 19-21602, 2020 WL 6938353, at *4 (D.N.J. Nov. 25, 2020).

Pursuant to *Guidotti*, the Court cannot decide Defendants' Motion to Compel Arbitration under a Rule 12(b)(6) standard and without discovery because the Complaint lacks the requisite clarity to establish that the parties agreed to arbitrate Plaintiff's claims. To start, Plaintiff's Complaint makes no explicit reference to the Arbitration Agreement. Nor is the Arbitration Agreement attached to the Complaint as an exhibit. (*See generally* Compl.). Rather, the

Arbitration Agreement was filed for the first time in connection with Defendants' Motion. (D.E. No. 12-2). Further, the Arbitration Agreement is not integral to or relied upon in the Complaint nor is it incorporated by reference in the Complaint. Plaintiffs' claims do not arise under the Arbitration Agreement. Nor do Plaintiff's allegations "turn on the 'terms and conditions' of" an agreement "that [] contains the subject arbitration provision"—i.e., his employment contract with Dropoff. *See George*, 2019 WL 2591163, at *3. Rather, Plaintiff's claims stem from Defendants' alleged harassment and retaliation in violation of the NJLAD and state tort law. *See Hubbard*, 2019 WL 2866067, at *2 (declining to apply Rule 12(b)(6) where the complaint neither referenced the arbitration agreement nor attached it as an exhibit to the complaint and finding that plaintiffs' claim did not stem from the existence of an arbitration agreement). In addition, the Complaint never mentions, much less discusses, any documents that contain or incorporate the Arbitration Agreement. (*See generally* Compl.). And Defendants do not argue that the Arbitration Agreement is integral to or relied upon in the Complaint. (*See generally* Mov. Br. & Reply). Thus, "[u]nder *Guidotti*'s first pathway, . . . the affirmative defense of . . . arbitrability is [*not*] apparent on the face of [the] [c]omplaint, making application of Rule 12(b)(6) inappropriate in this case." *See Horton v. FedChoice Fed. Credit Union*, 688 F. App'x 153, 157 (3d Cir. 2017) (internal quotations omitted) (emphasis added). Therefore, evaluating the motion under Rule 56, rather than 12(b)(6), is proper. *See Guidotti*, 716 F.3d at 776.

Since *Guidotti*, courts within this District routinely deny motions to compel arbitration and allow limited discovery on the narrow issue of arbitrability where the complaint makes no reference to whether the parties agreed to arbitration and the asserted claims do not arise under the parties' arbitration agreement. *See, e.g.*, *Divoc 91, LLC v. Nat. Essentials, Inc.*, No. 22-249, 2023 WL 2625275, at *3 (D.N.J. Mar. 24, 2023) (denying motion to compel arbitration and stay

proceedings because the plaintiff's complaint "ma[de] no reference to whether the parties *agreed* to arbitration"); *Torres v. Rushmore Serv. Ctr., LLC*, No. 18-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018) (denying motion to compel arbitration where the agreement, arbitration provision, and class action waiver were not referenced in the complaint and were raised for the first time in the defendant's motion); *Sauberman v. Avis Rent a Car Sys., L.L.C.*, No. 17-0756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) (denying motion to compel arbitration and ordering limited discovery where the complaint did not establish on its face that the parties agreed to arbitrate); *Ackies v. Scopely, Inc.*, No. 19-19247, 2020 WL 5757988, at *4 (D.N.J. Sept. 28, 2020); *Aiello on behalf of Landers v. AHC Florham Park LLC*, No. 20-7169, 2021 WL 118931, at *2–3 (D.N.J. Jan. 13, 2021); *Hubbard*, 2019 WL 2866067, at *2, n.1; *Nicasio v. Law Offs. of Faloni & Assocs., LLC*, No. 16-0474, 2016 WL 7105928, at *2 (D.N.J. Dec. 5, 2016).

Further, here, though Plaintiff admits the existence of *a* valid Arbitration Agreement (Opp. at 9–10), he denies that Defendants are parties to that agreement. It is not clear from the Complaint, or even the pleadings in general, whether Defendants are party to the Arbitration Agreement as third-party beneficiaries, and whether Plaintiff's claims are covered claims under the Agreement. Defendants do not neatly fit into any of the categories of intended third-party beneficiaries listed in the Agreement, and Plaintiff's claims against Defendants do not fit neatly into any category of covered claims. "As courts in this circuit have explained, a 'motion to compel arbitration must be denied pending further development of the factual record' in scenarios in which the pleadings do not adequately elucidate the relationship between the relevant parties." *Anfibio v. Optio Solutions LLC*, No. 20-1146, 2022 WL 2358389, at *4 (D.N.J. June 30, 2022) (quoting *Guidotti*, 716 F.3d at 774) (collecting cases); *see also id.* at *4 (finding discovery on arbitrability necessary where it was not clear from the papers whether Defendant qualified as a third-party beneficiary of the

11

relevant arbitration agreement); *MacDonald v. Unisys Corp.*, 951 F. Supp. 2d 729, 738 (E.D. Pa. 2013) ("The applicability of equitable estoppel and/or third party beneficiary theories depends upon materials outside the sphere of those that can be considered in a motion to dismiss. . . . Therefore, I will deny [the defendant's] motion to compel arbitration of Count II without prejudice to [the defendant] to renew this motion under a summary judgment standard, and allow discovery on the issue of arbitrability."); *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010). ("[A] question of arbitrability arises . . . when the parties are in dispute as to 'whether a concededly binding arbitration clause applies to a certain type of controversy.'" (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003))).

Finally, the Court will defer ruling on the portion of Defendant's motion requesting dismissal of Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Mov. Br. at 9–30) until deciding, upon Defendants' motion after the close of discovery, whether Plaintiff's claims are subject to arbitration. *See Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 577 (3d Cir. 2017) (holding that "the District Court erroneously ruled on [the defendant's] motion to dismiss before resolving its motion to compel arbitration" and noting that "after a motion to compel arbitration has been filed, the court must 'refrain from further action' until it determines arbitrability" (quoting *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004)); *Manopla v. United Collection Bureau, Inc.*, No. 19-16777, 2020 WL 6938354, at *3 (D.N.J. 2020) ("The Court will therefore order limited discovery on whether Defendant may enforce the Arbitration Provision, and will defer ruling on all other issues raised by Defendant's Motion, such as whether Plaintiff's Complaint should be dismissed for failure to state a claim.").

## IV.     CONCLUSION

For the reasons stated above, Defendants' Motion is **DENIED,** *without prejudice* to their ability to renew, pending limited fact discovery on the issue of arbitrability, their arbitrability arguments in a motion for summary judgment pursuant to Rule 56 or their arguments for dismissal under Rule 12(b)(6).  Defendants may file a renewed motion to compel arbitration under Rule 56 and/or a renewed motion to dismiss within thirty days of the close of discovery.  An appropriate Order follows.


**Dated:** December 27, 2023                                                                    *s/Esther Salas*
                                                                                                                  **Esther Salas, U.S.D.J.**