**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NICOLA CASTELLI,<br><br>      **Plaintiff,**<br><br>      v.<br><br>AMERICAN RED CROSS, JILL MULLANE, OMER ANGUN, *et al.*,<br><br>      **Defendants.** | Civil Action No.: 23-1198 (ES) (AME)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

On September 17, 2025, Plaintiff Nicola Castelli ("Plaintiff") filed the First Amended Complaint alleging various claims against defendants the American Red Cross ("ARC"), Jill Mullane ("Mullane"), and Omer Angun ("Angun") (together, "Defendants"). (D.E. No. 54 ("FAC")). Before the Court is Defendants' motion to dismiss Plaintiff's FAC pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (D.E. No. 55 ("Motion" or "Mot.")). The Court has carefully reviewed the First Amended Complaint and the parties' submissions in support of and in opposition to the Motion (*see generally* D.E. No. 55-1 ("Mov. Br."); D.E. No. 58 ("Opp. Br."); D.E. No. 59 ("Reply Br.")), and decides the matter without oral argument, *see* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' Motion is **GRANTED** in-part and **DENIED** in-part.

## I.    BACKGROUND

### A.    Factual Allegations[1]

From on or around October 10, 2020, to on or around March 14, 2022, non-party Dropoff, Inc. ("Dropoff") employed Plaintiff as a medical courier.  (FAC ¶¶ 11–13).  Plaintiff maintains that Dropoff unlawfully terminated his employment on March 14, 2022.  (*Id.* ¶ 12).  Bernard Melton, Plaintiff's supervisor, directed Plaintiff's pickup and delivery schedule for Dropoff.  (*Id.* ¶¶ 15 & 37).  "[A]pproximately three to four times per day," Plaintiff conducted pickups and deliveries at ARC's Fairfield, New Jersey office, as directed by Dropoff.  (*Id*. ¶¶ 16–17).  Plaintiff alleges Dropoff unlawfully terminated his employment after he experienced sexual harassment from an ARC employee, defendant Mullane, whom he encountered "approximately three to four times per week" while performing his job duties at ARC.  (*Id.* ¶¶ 18–19 & 78).

Specifically, Plaintiff alleges that after beginning his position with Dropoff, while onsite at ARC during the workday, Mullane asked Plaintiff out on a date, which made him feel uncomfortable.  (*Id.* ¶ 22).  Although Plaintiff "politely declined" Mullane's request, she continued to ask Plaintiff on dates during his pickups and deliveries at ARC and "made other sexually motivated comments towards Plaintiff at least once or twice per week."  (*Id.* ¶¶ 22–24; *see also id.* ¶¶ 25–26 (alleging that Mullane would often ask Plaintiff the following questions: (i) "Will you go out with me?" (ii) "How would you rate me in attractiveness?" and (iii) "Don't you fine me attractive?").  Plaintiff continued to decline Plaintiff's advances, and made clear that he would not date women that he worked with.  (*Id.* ¶ 27).  Plaintiff maintains that he "made verbal complaints" about Mullane's conduct to his supervisor and ARC's manager, Angun.  (*Id.* ¶ 28).  Angun advised

---

[1]    The factual background is taken from the allegations in the First Amended Complaint.  For purposes of the instant Motion, the Court accepts the factual allegations as true and draws all inferences in the light most favorable to Plaintiff.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  The Court assumes the parties' familiarity with the procedural posture of this matter and recites only the history applicable to the instant Motion.

Plaintiff to "ignore" Mullane and to "keep 'hush' about the situation." (*Id.* ¶ 29). Angun allegedly did nothing to address Mullane's behavior; nor did he conduct an investigation regarding Plaintiff's complaints. (*Id.* ¶ 30).

Meanwhile, Mullane continued to pursue Plaintiff, which caused Plaintiff embarrassment, stress, and anxiety each time he went to ARC on behalf of Dropoff. (*Id.* ¶ 32). For example, in or around June 2021, Mullane allegedly harassed Plaintiff in front of a female FedEx driver, by asking the driver whether she thought Plaintiff was "attractive" and suggesting that the pair should "go out on a date." (*Id*. ¶¶ 33–35). Next, on or about July 31, 2021, Plaintiff picked up an order from ARC and "denied a sexual advance made by" Mullane. (*Id.* ¶ 36). Shortly thereafter, Melton informed Plaintiff that his employment at Dropoff had been suspended—without an explanation—until ARC reviewed its security camera footage. (*Id*. ¶¶ 37–38). Melton further advised Plaintiff that ARC did not want him on site because of a complaint lodged by Mullane. (*Id.* ¶ 38). Plaintiff contacted Angun, who informed him that Mullane "complained to [ARC] that Plaintiff was loud and slammed his trunk when performing [a] pickup." (*Id.* ¶ 39). Plaintiff refuted Mullane's allegations. (*Id.* ¶ 40). ARC "cleared" Plaintiff of "all wrongdoings" after it reviewed the its security camera footage. (*Id.* ¶ 41). Consequently, Plaintiff asserts that the video footage "demonstrated that Plaintiff did not engage in the behavior [ ] Mullane falsely accused him of." (*Id.* ¶ 42). Thereafter, Dropoff lifted Plaintiff's suspension effective August 2, 2021. (*Id.* ¶ 43). Plaintiff missed two days of work and income as a result "Mullane's false allegation." (*Id.*).

Sometime later in August 2021, Plaintiff "complained to Melton of the ongoing sexual harassment and subsequent retaliation he faced from [ ] Mullane." (*Id*. ¶ 44). In particular, Plaintiff told Melton about Mullane's "constant sexual advances, the incident with the FedEx driver, as well as [ ] Mullane's inappropriate inquiries into Plaintiff's nonexistent relationship with

the FedEx employee." (*Id.* ¶ 45). Furthermore, Plaintiff "complained" that Mullane "retaliated against him by making a false complaint/report for denying her sexual advances." (*Id.*). Plaintiff also made similar complaints to Angun around the same timeframe. (*Id.* ¶ 46). Again, Angun told Plaintiff to "avoid" Mullan because she "suffers from bipolar disorder." (*Id.* ¶ 47). ARC never investigated Plaintiff's complaints; nor did it support Plaintiff regarding his complaints. (*Id.* ¶ 48). "For the remainder of his employment [at Dropoff], . . . Plaintiff remained fearful of how [ ] Mullane would retaliate against him, what she was capable of, and the potential effect of her causing an end to his employment with Dropoff due to her false retaliatory complaints." (*Id.* ¶ 49).

Thereafter, on or about October 31, 2021, Mullane allegedly hid plastic snakes in Plaintiff's truck in an attempt to both "frighten and/or intimidate him." (*Id.* ¶ 50.). Plaintiff maintains that Mullane used "these pranks as an excuse to speak with, and further harass [him]." (*Id.* ¶ 51). Then Mullane's "attitude toward Plaintiff changed." (*Id.* ¶ 52). For example, in November 2021, Plaintiff alleges he "again brought [ ] Mullane's conduct to the attention of both Dropoff and [ARC]," by telling Melton and Angun that he "was being sexually harassed by [ ] Mullane and he believed she was retaliating against him for denying her advances." (*Id.* ¶ 53). Dropoff and ARC ignored Plaintiff's complaints and he "was told not to inform anyone else of the treatment he was facing." (*Id.* ¶ 54).

That same month, Plaintiff asserts Dropoff directed him to take certain boxes from St. Joseph's University Medical Center ("St. Joseph's") to ARC; about ten minutes later, Dropoff directed Plaintiff to take boxes from ARC back to St. Joseph's. (*Id.* ¶¶ 55–56). Plaintiff noted his confusion about these reverse directives to Mullane, who met Plaintiff when he picked up boxes at ARC. (*Id.* ¶ 57). Mullane responded by "scold[ing]" Plaintiff and "slamm[ing] the door on

him." (*Id.* ¶ 58). "Soon thereafter," Dropoff suspended Plaintiff pending ARC's investigation of a complaint made against him by Mullane. (*Id.* ¶ 59). Although Plaintiff maintains that he did not know the "substance of the complaint," ARC's investigation revealed that "Plaintiff did not engage in any wrongdoing." (*Id.* ¶ 60).

Plaintiff additionally asserts that on March 12, 2022, Dropoff directed him to pick up boxes from ARC for delivery to Pennsylvania. (*Id.* ¶ 64). Plaintiff refused, but Plaintiff ultimately agreed to perform the pickup and delivery. (*Id.* ¶ 65). When he arrived in Fairfield, no one from ARC answered the doorbell, which he rang twice. (*Id.* ¶ 66). While waiting for ARC to answer the doorbell, he contacted a Dropoff dispatcher, who asked Plaintiff to wait while it contacted ARC. (*Id.* ¶ 67). An ARC employee eventually told Plaintiff that "there was no order for him to pick up." (*Id.* ¶ 68). Plaintiff immediately contacted Dropoff to relay the development and his departure from ARC's premises, citing his "concern" about "Mullane's erratic, harassing, and retaliatory behavior." (*Id.* ¶¶ 69–70). About an hour later, Dropoff suspended Plaintiff pending an investigation by ARC. (*Id.* ¶ 71). Dropoff did not respond to Plaintiff's inquiry regarding the reason for his suspension. (*Id.* ¶ 72). Angun told Plaintiff that Mullane "reported Plaintiff for allegedly using a volunteer entrance and entering the building" at ARC "during the [March 12, 2022] pickup, which was prohibited and in violation of protocols, and a violation of Plaintiff's duties as a courier." (*Id.* ¶ 73). Plaintiff maintains he never entered the ARC building and that Mullane fabricated her report. (*Id.* ¶ 74). Plaintiff alleges that ARC never investigated Mullane's "several clearly false reports" about Plaintiff's purported conduct. (*Id.* ¶ 75). Moreover, Plaintiff claims that during each of his suspensions from performing courier services at ARC, Angun and Dropoff asked him to perform night delivers to ARC when Mullane was off duty. (*Id.* ¶ 62). Thus, Plaintiff believes that ARC knew Mullane's complaints were "frivolous" because he had

5

permission to conduct courier services when Mullane was not present, "which he did without issue." (*Id.* ¶ 63).

Following Mullane's last complaint, ARC informed Plaintiff that it did not want him on its "premises due to the complaints made by [ ] Mullane." (*Id.* ¶ 76). Plaintiff asserts that on or about March 14, 2022, Dropoff terminated his employment because he "was no longer authorized to enter [ARC's] premises, where he completed a majority of his work for." (*Id.* ¶ 77). Plaintiff alleges that ARC "utterly failed to investigate and/or remedy the sexual harassment complaint of by Plaintiff and fostered an environment of unlawful activity." (*Id.* ¶ 79; *see also id.* ¶ 61 (noting that Plaintiff was "terrified to perform his job duties" at ARC because of Mullane's conduct and both Dropoff and ARC's "failure to investigate and/or remediate his complaints")). He believes that ARC did not want him "on their premises due to his numerous complaints of sexual harassment and retaliation against a[n] [ARC] employee." (*Id.* ¶ 80). As a result, Plaintiff alleges that he "suffered, and continues to suffer, from severe physical and emotional distress, humiliation, mental anguish, and economic loss." (*Id.* ¶ 81).

Finally, Plaintiff maintains that before his interactions with Mullane, he never had any disciplinary action by Dropoff. (*Id.* ¶ 20). Nor had he ever been the subject of a complaint or investigation "by Dropoff or a customer of Dropoff." (*Id.* ¶ 21). Furthermore, Plaintiff "was a highly relied upon employee who excelled in performing his job duties and responsibilities" at Dropoff. (*Id.* ¶ 14).

Plaintiff's First Amended Complaint alleges five causes of action against Defendants, including: (i) violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 *et seq.*, specifically retaliation and aiding and abetting retaliation (Counts I and II); (ii) defamation (Count III); (iii) tortious interference with a prospective economic advantage (Count

IV); and (iv) negligence (Count V).  (FAC ¶¶ 82–120).  On October 1, 2025, Defendants filed a motion to dismiss Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6).  (Mot.).  The Motion is fully briefed.  (*See generally* Mov. Br.; Opp. Br.; Reply Br.).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  This pleading standard does not require detailed factual allegations; it does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).  In addition, the plaintiff's short and plain statement of the claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

For a complaint to survive dismissal under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (internal citation omitted).  "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded.  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  Further, a complaint may be considered frivolous where it relies on an "'indisputably meritless legal theory' or a 'clearly baseless' or 'fantastic or delusional' factual scenario."  *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989)).

7

III.   **DISCUSSION**

A.   **Plaintiff's NJLAD Claims (Counts I & II)**

Under the NJLAD, an employer may not retaliate against an employee because that employee "has opposed any practices or acts forbidden under [NJLAD] or because that person has . . . filed a complaint, testified or assisted in any proceeding under [NJLAD]." N.J. Stat. Ann. § 10:5-12(d); *see also Cortes v. Univ. of Med. & Dentistry of N.J.*, 391 F. Supp. 2d 298, 314 (D.N.J. 2005). "To state a prima facie case for retaliation under the NJLAD, a plaintiff must show that []he (1) engaged in protected activity, (2) that []he suffered an adverse employment action, and (3) that there was a causal connection between the protected activity and the adverse employment action." *Nuness v. Simon & Schuster, Inc.*, 221 F. Supp. 3d 596, 605 (D.N.J. 2016) (first citing *Sanchez v. SunGard Availability Servs. LP*, 362 F. App'x 283, 287 (3d Cir. 2010); and then citing *Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 619 (N.J. 2013)).

Defendants first argue that Plaintiff cannot maintain his NJLAD claims against Defendants because they did not employ Plaintiff. (Mov. Br. at 6–8). Plaintiff argues that the statute "is not limited to one's employer, but rather applies to the conduct of 'any person.'" (Opp. Br. at 6–7 (citing N.J. Stat. Ann. § 10:5-12(d) and *Cottrell v. J & R Disc. Liquor Gallery, Inc.*, No. 08-5418, 2009 WL 1085729, at *4 (D.N.J. Apr. 21, 2009)); *see also id.* at 8–9). For the reasons set forth below, the Court agrees with Defendants and need not reach the balance of their arguments.

As noted by Plaintiff, (*see* Opp. Br. at 6–7), NJLAD retaliation claims are rooted in Section 10:5-12(d) of the statute, which provides, in relevant part, that "[i]t shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination":

> d.  For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under P.L.1945, c. 169 (C.10:5-1 et seq.) . . . .

N.J. Stat. Ann. § 10:5-12(d). By the provision's plain terms, retaliation can occur if reprisals are

8

carried out by "*any person*" against an individual who opposes conduct that is prohibited under the NJLAD, *i.e.*, any forbidden act as defined under N.J. Stat. Ann. § 10:5-1, *et seq.*  *See id.* (emphasis added).  Indeed, this is the theory Plaintiff pursues as reflected in both his First Amended Complaint and opposition brief.  (*See* FAC ¶¶ 82–96; *see also, e.g.*, Opp. Br. at 9 (arguing that "Plaintiff's complaints to ARC opposing the practice of one of its employees is a protected activity" under NJLAD "and therefore, the retaliation claim against Defendants is cognizable")).  Plaintiff broadly alleges that the prohibited practice or act he opposed under the NJLAD is Mullane's alleged "sexual harassment" that Plaintiff experienced on a weekly basis when he performed his job duties for Dropoff on ARC's premises.  (FAC ¶¶ 23–24, 44, 78–80, 91, 93 & 95).

Relevant here, Plaintiff's allegations with respect to his reports of alleged "sexual harassment" are vague and conclusory at best.  (*See* FAC ¶ 28 (alleging that Plaintiff made verbal complaints about Defendant Mullane's conduct to Melton and Red Cross manager, Angun); *id.* ¶ 45 (claiming that "Plaintiff informed Melton of Defendant Mullane's constant sexual advances" and mentioning one encounter with a FedEx driver); *id.* ¶ 45 ("Plaintiff also complained that he believed [ ] Mullane retaliated against him by making a false complaint/report for denying her sexual advances")).  Similarly, Plaintiff seems to allege, in a circular fashion, that Defendants retaliated against him under the NJLAD because Plaintiff complained about Defendants' "retaliation" to Angun and Melton.  (*See, e.g.*, *id.* ¶¶ 44, 78 & 80).  These allegations are also conclusory.[2]  *Sapp v. Trenton Bd. of Educ.*, No. 24-10360, 2026 WL 636828, at *10 (D.N.J. Mar. 6, 2026) (dismissing NJLAD claim where the court could not determine whether plaintiff engaged in protected activity by "opposing a practice rendered unlawful by NJLAD" because Plaintiff

---

[2]    The vague complaints and reports made by Plaintiff are distinguishable from the alleged questions Mullane asked Plaintiff on a weekly basis (*see* FAC ¶¶ 22–26); however, those allegations are likewise sparse at best.

failed to "allege any facts regarding the substance of [his] complaints" to the department of education).

Despite these pleading deficiencies, Plaintiff's First Amended Complaint also fails to cite or reference the underlying NJLAD provision(s) that forms the basis of the alleged "sexual harassment" and "retaliation" that Plaintiff allegedly opposed as conduct that is prohibited under the NJLAD. (*See generally* FAC; *see also* Opp. Br.). For example, as it relates to sexual harassment, the NJLAD provides that "[i]t shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination":

> a. For an employer, because of the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, pregnancy or breastfeeding, sex, gender identity or expression, disability [and other protected statuses] . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . . .

N.J. Stat. Ann. § 10:5-12(a). This provision plainly applies to discriminatory conduct by "***an employer***." *See id.* (emphasis added). Plaintiff concedes that neither ARC, Angun, or Mullane employed him during the relevant period. (*See* FAC ¶ 11 (alleging that "Plaintiff, at all times relevant to this Complaint, was employed by Dropoff, Inc.")). Accordingly, it is unclear how Plaintiff could have opposed ARC, Angun, or Mullane's conduct under Section 10:5-12(a)—applicable only to "***an employer***." *See* N.J. Stat. Ann. § 10:5-12(a) (emphasis added). To the extent Plaintiff maintains that ARC acted as an "employer-controller of the worksite," (*see* Opp. Br. at 8), he does not expand on this or any other joint-employer theory of liability in his opposition brief or First Amended Complaint (*see id.*; *see also* FAC).

Furthermore, it is unclear whether Plaintiff has sufficiently invoked any other provision of the NJLAD that would permit a retaliation claim under Section 10:5-12(d) in the absence of an

employer-employee relationship.  Relevant here, the Court rejects Plaintiff's attempt to amend his pleading in opposition to Defendants' Motion by transforming Count I into a public accommodation retaliation claim under Section 10:5-12(f)(1).  (*See* Opp. Br. at 8).[3]  On this score, the Court agrees that Plaintiff does not allege that ARC's Fairfield location is "open to the public," (*see* Reply Br. at 6).  When read as a whole, Mullane's alleged sexual harassment forms the basis of Plaintiff's retaliation claim—not ARC's failure to accommodate Plaintiff in a public space.  (*See generally* FAC (omitting any reference to "public accommodation" or "Section 10:5-12(f)(1)")).  Thus, even if construed broadly, the First Amended Complaint does not put Defendants on notice of a public accommodation retaliation claim under NJLAD.  (*See generally id.*).

For these reasons, the Court finds this matter distinguishable from cases that hold an employer-employee relationship is not required to pursue an NJLAD retaliation claim.  *See, e.g.*, *Cottrell v. J & R Disc. Liquor Gallery, Inc.*, No. 08-5418, 2009 WL 1085729, at *4 n.6 (D.N.J. Apr. 21, 2009) (noting that the NJLAD is "not limited to employer/employee relationships" where plaintiffs brought an NJLAD relation claim premised on their reporting of defendants' alleged "failure to make accessible handicapped parking for the disabled liquor store patrons" under the public accommodations prong of the NJLAD, Section 10:5-12(f)).  Accordingly, Defendants' motion to dismiss Count I is **GRANTED**.  *See, e.g.*, *Turner v. Johnson*, No. 17-0541, 2024 WL 4891773, at *3 (D.N.J. Nov. 26, 2024) (dismissing plaintiff's retaliation claim where no employer-employee relationship existed among the parties and noting that "[t]o the extent [p]laintiff has an NJLAD claim against [d]efendants, it would be based on NJLAD's prohibition on discrimination

---

[3]     Plaintiff may not amend his First Amended Complaint through arguments raised in an opposition brief.  *See, e.g.*, *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (holding that a court considering a Rule 12(b)(6) motion must limit its review to the allegations in the complaint, and "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss" (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984))).

11

in public accommodations"). Count I is **DISMISSED** *without prejudice* to Plaintiff's right to amend his complaint and clarify the basis of his NJLAD retaliation claim. In doing so, Plaintiff shall identify how the conduct he opposed is prohibited by the NJLAD and identify the specific provision(s) that forbid the opposed conduct by the non-employer Defendants. In addition, to the extent Plaintiff continues to maintain an NJLAD retaliation claim premised on alleged sexual harassment, he shall allege the details surrounding the alleged sexual harassment, including all reports made in relation thereto, with the appropriate specificity.[4]

Finally, because the Court finds that Plaintiff fails to state a claim for the principal violation of NJLAD retaliation, he cannot maintain a separate claim for aiding and abetting the same under Section 10:5-12(e). *See Taylor v. Lincare, Inc.*, No. 15-6284, 2016 WL 3849852, at *7 (D.N.J. July 15, 2016) ("Therefore, 'because [p]laintiff's underlying causes of action fail, there can be no claim for aiding and abetting in violation of the NJLAD.'" (quoting *Haddix v. Camden Cty. Youth Det. Ctr.*, 2015 WL 3755023, at *6 (D.N.J. June 16, 2015))). Accordingly, Defendants' motion to dismiss Count II is **GRANTED** and Count II is **DISMISSED** *without prejudice*.[5]

### B.    Plaintiff's Defamation Claim (Count III)

"To establish defamation under New Jersey law, a plaintiff must show the defendant (1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, and (3) had a sufficient degree of fault." *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 204 (D.N.J. 2011) (citing *Singer v. Beach Trading Co.*, 379 N.J. Super. 63,

---

[4]    Relevant here, an amended pleading should include all allegations within Plaintiff's knowledge, including, but not limited to, the time the alleged sexual harassment began, and any and all details regarding: (i) Plaintiff's complaints to Angun and Melton regarding Mullane's alleged sexual harassment; (ii) Mullane's allegedly false complaints/reports regarding Plaintiff; and (iii) the extent and breadth of Mullane's alleged sexual advances, "sexually motivated comments," or similar behavior. (*See, e.g.*, FAC ¶ 24).

[5]    Because the Court dismisses Counts I and II for the reasons stated above, it need not address Defendants' remaining arguments in support of dismissal.

12

79, 876 A.2d 885 (N.J. App. Div. 2005)).

As a preliminary matter, in opposing Defendant's Motion, Plaintiff clarifies that his "defamation claim is solely against Mullane." (Opp. Br. at 20 & 21 n.1). Thus, the Court need not address Defendants' defamation arguments that pertain to Angun or ARC.[6] (*See* Mov. Br. at 20–21). For this reason, Count III is **DISMISSED** as to Angun and ARC *with prejudice*.

On the merits of Count III, Defendants argue that Plaintiff fails to sufficiently plead facts "to identify the defamatory words, their utterer[,] and the fact of their publication" such that his "vague and conclusory allegation[s] [are] not enough." (Mov. Br. at 21–22 (quoting *Langley v. United Airlines, Inc.*, No. 23-20602, 2024 WL 3219295, at *4 (D.N.J. June 28, 2024))). Defendants also encourage the Court to dismiss Count II "because the alleged words do not rise to the level of defamatory." (*Id.* at 23). Specifically, Defendants argue that the only statement Mullane made that is pled with "any semblance of particularity" (*see id.* at 24), is that Plaintiff "used a volunteer entrance and enter[ed] the building of [ARC] during the pickup, which was prohibited and in violation of protocols, and a violation of Plaintiff's duties as a courier," (*see* FAC ¶ 73; *see also id.* ¶ 104). They contend that this statement "does not convey anything that would subject Plaintiff to hatred, contempt, or ridicule, nor would it deter third persons from associating or dealing with him." (Mov. Br. at 24). At most, Defendants suggest that Mullane's statement reflects "a trivial mistake" Plaintiff made when "carrying out his duties." (*Id.*).

Plaintiff opposes, arguing that he alleged "a concrete accusation by Mullane" which consisted of her report that he "used a volunteer entrance" and "entered ARC's building during a pickup" combined with the allegations that Mullane uttered the statement to "ARC management"

---

[6]     Plaintiff fails to explain—in his First Amended Complaint and opposition brief—how Count III is pled as to ARC "in the alternative based on publication through workplace channels" under a vicariously liability theory, (*see* Opp. Br. at 21 n.1). Thus, the Court will not assess Plaintiff's purported alternative theory against ARC.

that was subsequently "relayed to Dropoff" on "March 12, 2022 at ARC's Fairfield facility." (Opp. Br. at 21 (quoting FAC ¶ 73); *see also id.* at 22 (noting that "employment-related reports about a person's honesty, fitness, or compliance with workplace rules are 'published' when they are made to management")). Plaintiff further asserts that Mullane's statement was disparaging because the alleged conduct defied ARC's policies and procedures and "intended to harm Plaintiff's reputation with his employer and in the community." (*Id.* at 21 (citing FAC ¶¶ 104–05)). In addition, Plaintiff maintains that he need not plead the "precise defamatory statements" Mullane made at the motion to dismiss stage. (*Id.* at 22). For the foregoing reasons, the Court **DENIES** Defendants' Motion to dismiss Count III as it pertains to Mullane's statement regarding Plaintiff's improper use of ARC's volunteer entrance.

While "a defamation pleading does not need to cite *precise* defamatory statements, it must . . . provide sufficient notice to the other party of the allegations made against [it]." *Cristelli v. Filomena II, Inc.*, No. 99-2862, 1999 WL 1081290, at *3 (D.N.J. Dec. 1, 1999) (emphasis added). The "pleading must allege the elements of defamation . . . to a degree of sufficient specificity." *Mangan*, 834 F. Supp. 2d at 204. As such, a plaintiff "'must plead facts sufficient to identify the defamatory words, their utterer[,] and the fact of their publication. A vague[,] conclusory allegation is not enough.'" *Robles v. U.S. Env't Universal Servs., Inc.*, 469 F. App'x 104, 109 (3d Cir. 2012) (quoting *Zoneraich v. Overlook Hosp.*, 514 A.2d 53, 63 (N.J. Super. Ct. App. Div. 1986)); *see also F.D.I.C. v. Bathgate*, 27 F.3d 850, 875 (3d Cir. 1994). "In other words, a plaintiff must plead facts sufficient to identify 'when, where, by which defendants and by what words, written or oral, plaintiff was defamed.'" *Russomanno v. Sunovion Pharms., Inc.*, No. 22-5032, 2023 WL 2649453, at *2 (D.N.J. Mar. 27, 2023) (quoting *Cruz v. HSBC*, No. 10-0135, 2010 WL 2989987, at *3 (D.N.J. July 26, 2010)), *aff'd*, No. 23-1587, 2023 WL 6374191 (3d Cir. July 17,

14

2023).  "A plaintiff can bolster a defamation cause of action through discovery but not [ ] file a conclusory complaint to find out if one exists." *Printing Mart–Morristown v. Sharp Elec. Corp.*, 563 A.2d 31, 46 (N.J. 1989) (internal quotation marks and citation omitted).

Although Defendants correctly note that a defamatory statement must be pled with specificity, the Court disagrees that Plaintiff has failed to do so here with respect to Mullane's statement about Plaintiff's use of ARC's volunteer entrance.  For example, Defendants are on adequate notice that Mullane allegedly reported Plaintiff's use of a volunteer entrance at ARC on or about March 12, 2022.  (FAC ¶¶ 64 & 73).  Plaintiff identifies Mullane as the person who uttered the allegedly defamatory statement and it can easily be inferred that Mullane made the statement sometime between March 12, 2022—the date of the incident in question—and March 14, 2022, the day Dropoff terminated Plaintiff.  (*See* FAC ¶¶ 64 & 95).  When viewing the allegations in the non-movant's favor, the Court can infer that Mullane made the allegedly false report to management because Angun, an ARC supervisor, informed Plaintiff about Mullane's report.  (*See id.* ¶ 73).  Indeed, "while it would be more clear had the First Amended Complaint been more specific about which employees and/or management at ARC"[7] Mullane made the allegedly false statements to, "the Court believes that the First Amended Complaint describes the alleged facts of publication with enough particularity to provide ARC with knowledge of the circumstances." *See Cruz*, 2010 WL 2989987, at *3 (quotation modified).[8]  However, to the extent Plaintiff maintains

---

[7]   The fact that Mullane allegedly made the defamatory statement to ARC—not Plaintiff's employer—is of no moment in the context of a defamation claim. *See Mangan*, 834 F. Supp. 2d at 206 ("New Jersey courts have instead addressed whether the statement was protected by a qualified privilege." (citing *Abella v. Barringer Res., Inc.*, 615 A.2d 288, 291 (N.J. Ch. Div. 1992) ("A defamatory statement is published when it is communicated ... to one other than the person defamed."))).

[8]   Defendants' cited cases are distinguishable from the instant matter because those complaints either fail to provide any subject matter regarding the alleged defamatory statements or they broadly attribute vague and conclusory criminality to the plaintiff. (*See* Mov. Br. at 21–22 (citing cases)).  In addition, for the reasons noted above, the Court rejects Defendants' argument that "[v]erifiability of Plaintiff's allegations is also questionable because Plaintiff

that Mullane made any other "knowingly false statements concerning [him]" (FAC ¶ 104), the Court agrees that these purported statements are vague and conclusory; thus, they lack the requisite specificity to survive Defendants' Motion.

Next, while also a closer call, the Court disagrees that the alleged statement regarding Plaintiff's use of ARC's volunteer entrance is not defamatory as it pertains to ARC and Dropoff. "A defamatory statement is one that is (1) false and injures another person's reputation, or (2) subjects a person to hatred, contempt or ridicule, or (3) causes others to lose good will or confidence in that person." *Castillo v. Viso*, No. 17-5255, 2024 WL 3594351, at *12 (D.N.J. July 31, 2024) (quoting *Morgan v. Maxwell*, No. A-3157-19, 2021 WL 1605989, at *8 (N.J. Super. Ct. App. Div. Apr. 26, 2021)).  Thus, a defamatory statement "is one that . . . deter[s] others from wanting to associate or deal with [the subject of the statement]." *Read v. Profeta*, 397 F. Supp. 3d 597, 650–51 (D.N.J. 2019) (alterations in original) (quoting *G.D. v. Kenny*, 15 A.3d 300, 310 (N.J. 2011)).  To determine whether a statement is defamatory, the Court assesses the statement "according to the fair and natural meaning which it would be given by persons of ordinary intelligence." *Id.* at 651 (citation omitted).

Based on the allegations, which the Court must accept as true, Plaintiff maintains that Mullane's false reporting of his use of a volunteer entrance damaged his reputation with both ARC and Dropoff such that both entities lost confidence in his ability to perform his job duties as a courier.  (*See* FAC ¶¶ 103–06).  Specifically, Plaintiff asserts that use of the volunteer entrance "was prohibited and in violation of protocols, and a violation of Plaintiff's duties as a courier." (*Id.* ¶ 73; *see also id.* ¶ 104).  As a result, Plaintiff learned that ARC no longer wanted him on its

---

provides no precise words actually spoken." (*Id.* at 24).  Indeed, the Court finds that Mullane's allegedly defamatory statement has been pled with sufficient particularity for identification purposes.

16

premises in Fairfield, New Jersey. (Id. ¶ 76). And Dropoff terminated Plaintiff shortly thereafter. (*Id.* ¶¶ 77 & 107).[9] For these reasons, Defendants' Motion to dismiss Count III is **DENIED**. The Court recognizes, however, that Defendants may move for summary judgment on Plaintiff's defamation claim after the close of discovery.

### C.  Plaintiff's Tortious Interference with a Prospective or Existing Economic Advantage Claim (Count IV)

Under New Jersey law, to establish tortious interference with a prospective or existing[10] economic advantage, a party must establish:

> (1) a reasonable expectation of economic advantage from a prospective contractual or economic relationship; (2) the defendant intentionally and maliciously interfered with the relationship; (3) the interference caused the loss of the expected advantage; and (4) actual damages resulted.

*Am. Leistritz Extruder Corp. v. Polymer Concentrates, Inc.*, 363 F. App'x 963, 967 (3d Cir. 2010).

In Count IV, Plaintiff alleges that "Mullane interfered with Plaintiff's reasonable expectation of economic advantage by intentionally sabotaging Plaintiff's reputation and succeeding in having Plaintiff terminated from his employment with Dropoff." (FAC ¶ 111). He further asserts that each of "Mullane's complaints to [ARC] were fabricated and made in furtherance of [ ] Mullane's attempt to have Plaintiff terminated." (*Id.* ¶ 112; *see also id.* ¶ 113). Thus, Plaintiff believes that "Mullane tortiously interfered with [his] prospective economic relationship," which directly and proximately resulted in Plaintiff's damages. (*Id.* ¶¶ 114–15).

First, Defendants ask the Court to dismiss Count IV against Angun and ARC because the allegations in Count IV pertain only to Mullane. (Mov. Br. at 25). Plaintiff fails to refute this

---

[9]     For clarity, the Court agrees with Defendants in that Plaintiff has not pled how Mullane's allegedly defamatory statement damaged his reputation in the greater community. (*See* Mov. Br. at 24).

[10]    Although pled as "tortious interference with a ***prospective*** economic advantage," (FAC at 19), Defendants seemingly accept that Count IV relates to Plaintiff's then-existing economic relationship with his prior employer, Dropoff. (*See* Mov. Br. at 25–26).

argument and essentially confirms that he seeks to hold only Mullane liable under Count IV.  (*See* Opp. Br. at 23–24 (arguing that "Plaintiff can demonstrate [ ] ***Mullane*** tortiously interfered with [his] contract and/or prospective economic advantage with Dropoff); *see also id.* at 25–26 (maintaining that but-for "***Mullane's*** intentional[ ] and malicious[ ] interfere[nce]" with Plaintiff's relationship with Dropoff, he would not have been terminated; nor would he have suffered economic damages or emotional distress (emphasis added))).  In addition, the allegations in Count IV recounted above relate only to Mullane.  (*See* FAC ¶¶ 108–15).  Thus, Count IV is **DISMISSED** *without prejudice* as to Angun and ARC.

As it relates to Mullane, Defendants' sole argument in support of dismissal is that Mullane never "complained to Plaintiff's employer, Dropoff," nor did she ever "communicate[] with Dropoff management." (Mov. Br. at 26).  Rather, Defendants note that Mullane only "complained to ARC, *her* employer," which they say is fatal to Count IV because Plaintiff fails to allege "facts showing th[at] [ ] Mullane specifically intended to interfere with his employment with Dropoff." (*Id.*).  Defendants cite to *Angrisani v. Capital Access Network, Inc.*, 175 F. App'x 554, 557 (3d Cir. 2006) in support of its position because there, "the Third Circuit upheld dismissal of a tortious interference claim" where the plaintiff "could not demonstrate specific intent to interfere." (Mov. Br. at 25).  Plaintiff opposes, noting, among other things, that Mullane made "frivolous, unfounded complaints" with malice and "with the goal of having Plaintiff terminated." (Opp. Br. at 25).

Accepting all facts pled as true and drawing all reasonable inferences in favor of the non-movant, Plaintiff's First Amended Complaint states sufficient facts to satisfy the elements of a tortious interference claim against Mullane.  Relevant here, "malice is defined to mean that the harm was inflicted intentionally and without justification or excuse." *Printing Mart-Morristown*, 563 A.2d at 37.  Plaintiff alleges that Mullane purposefully "sabotage[d]" his reputation by lodging

18

false reports and complaints to ARC regarding Plaintiff's conduct during the course of his employment. (*See, e.g.*, FAC ¶¶ 45–46, 86 & 111). He also alleges that Mullane fabricated her complaints in furtherance of her "attempt to have Plaintiff terminated." (*Id.* ¶ 112). In addition, Plaintiff maintains that ARC cleared him of "wrongdoing in response to each false complaint" filed by Mullane. (*Id.* ¶ 88). At this juncture, the Court finds the allegations sufficient to establish intentional and malicious interference with Plaintiff's economic advantage, i.e., his employment relationship with Dropoff.

Defendants cite no authority that compels the Court to find that Mullane had to file complaints directly with Dropoff—Plaintiff's employer—to establish a tortious interference claim. (*See* Mov. Br. at 25–26). Although Defendants acknowledge that "it is ***equally*** plausible—if not more plausible—that [ ] Mullane . . . complain[ed] to her own employer to try to minimize her contact with Plaintiff," (Mov. Br. at 26 (emphasis added)), it is thus also equally plausible that she complained for the purpose alleged in the First Amended Complaint—to sabotage Plaintiff's economic relationship with Dropoff.

Moreover, *Angrisani* is distinguishable from the instant matter. There, the Third Circuit upheld the District Court's grant of summary judgment on plaintiff's tortious interference claim in favor of the defendant because plaintiff "failed to produce any evidence suggesting that [the defendant] acted to induce [plaintiff's employer] to terminate him, or that [defendant] prevented [plaintiff] from performing his job." 175 F. App'x at 557. First, this matter is on an entirely different procedural posture at the motion to dismiss stage and does not yet have the benefit of a full evidentiary record. Second, the allegations here, taken as true as the Court must at this stage, state that Mullane ***did*** act to induce Dropoff to terminate his employment relationship and that her actions ***did*** prevent Plaintiff from performing his job duties for Dropoff—first during brief

suspensions and then in perpetuity following his termination.  Moreover, Plaintiff also alleges that ARC ultimately "cleared" him of Mullane's accusations, and he further asserted that before encountering Mullane, Plaintiff (i) never had an complaint or investigation lodged against him by "either Dropoff or a customer of Dropoff," and (ii) never had any prior disciplinary action from Dropoff.  (FAC ¶¶ 20–21 & 88).[11]

For these reasons, the Court **DENIES** Defendant's Motion to dismiss Count IV as it pertains to Mullane.  *See, e.g.*, *Tonkinson v. Byrd*, No. 17-6162, 2018 WL 1919829, at *6 (D.N.J. Apr. 24, 2018) (noting that "[p]laintiff's lack of knowledge about what exactly [defendant] said to her new employer d[id] not cause her claim to fail at this motion to dismiss stage").

### D.       Plaintiff's Negligence Claim (Count V)

To establish negligence, a plaintiff must demonstrate that the defendant (i) owed the plaintiff a duty; (ii) breached that duty; and (iii) that the breach caused a "foreseeable resulting injury."  *Anderson v. Sammy Redd and Assocs.*, 650 A.2d 376, 378 (N.J. Super. App. Div. 1994).

In Count V, Plaintiff maintains that ARC "negligently created a discriminatory and/or harassing workplace" and that ARC "breached its duty of care by failing to exercise due care with respect to sexual harassment in the workplace."  (FAC ¶¶ 117–18).  As a result of ARC's alleged breach of its duty, Plaintiff claims that he "suffered harm" (*id.* ¶ 119) and "damages," (*id.* ¶ 120). Plaintiff then broadly seeks an array of damages from all "Defendants."  (*Id.*).

As with the preceding count, Defendants ask the Court to dismiss Count V as it pertains to Mullane and Angun because the "allegations under this count relate only to ARC."  (Mov. Br. at

---

[11]      Although Defendants argue Plaintiff failed to allege that Mullane "directly caused Dropoff to terminate him" in their reply brief (*see* Reply Br. at 13–14), the Court will not entertain arguments made for the first time in response to an opposition brief.  *See, e.g.*, *Spence v. New Jersey*, No. 19-21490, 2021 WL 1345872, at *5 (D.N.J. Apr. 12, 2021) ("[I]t is well-established that new arguments cannot be raised for the first time in reply briefs." (quoting *Pitman v. Ottehberg*, No. 10-2538, 2015 WL 179392, at *9 (D.N.J. Jan. 14, 2015))).

26 n.5). Indeed, as reflected above, the First Amended Complaint alleges that only ARC owed Plaintiff a duty of care. (FAC ¶¶ 118–19). Plaintiff does not respond to this point in his opposition brief and confines his arguments to ARC's alleged duty and breach. (*See* Opp. Br. at 26–27). Accordingly, Count V is **DISMISSED** *without prejudice* as to Mullane and Angun.

As it relates to ARC, the Court further agrees with Defendants in that the allegations regarding the parties' relationship "falls far short of establishing any cognizable duty of care." (*See* Mov. Br. at 27). Akin to his NJLAD claim, Plaintiff's argument in opposition hinges on liability applicable to employers for "torts committed by an employee[s]" who act within "the scope of their employment." (*See* Opp. Br. at 26). Based on Plaintiff's own concessions regarding the lack of any employer-employee relationship amongst the parties, this avenue of relief fails for the same reasons noted above with respect to Plaintiff's NJLAD claim. (*See* Opp. Br. at 24 (arguing that "Plaintiff was part of an existing contractual relationship with his employer, Dropoff, and [ ] Mullane indisputably knew Plaintiff was employed by Dropoff"); *see also* FAC ¶¶ 11 & 111). In addition, Plaintiff does not cite any authority for the proposition that ARC—a third-party—owed him a duty of care as an employee of ARC's "regular vendor," i.e., Dropoff. (*See* Opp. Br. at 27 (arguing that [t]he failure to investigate known risks, mishandling and forwarding unfounded reports, and using site-access control in a way that foreseeably harms a known, regular vendor, are classic breach averments that precipitated Plaintiff's suspensions and termination")). Furthermore, to the extent Plaintiff attempted to amend his negligence claim in his opposition brief to assert claims for negligent hiring, negligent supervision, and/or negligent training, the Court finds that those claims are not apparent on the face of the First Amended Complaint. (*Compare* Opp. Br. at 26, *with* FAC). Accordingly, Defendants' Motion to dismiss Count V is **GRANTED** and Count V is **DISMISSED** *without prejudice*. To the extent Plaintiff chooses to file an amended

pleading, he shall clearly set forth the basis of his negligence claim, including any and all specific negligence theories.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion is **GRANTED** in-part and **DENIED** in-part.  An appropriate Order accompanies this Opinion.


Dated: July 2, 2026                                         *s/ Esther Salas*
                                                            **Esther Salas, U.S.D.J.**